Hough, J.
The record discloses that the franchise was passed in September, 1912. The day of the month of its passage does not appear. The 18th Amendment of the Constitution of Ohio be *527 came operative on the 15th day of November, 1912. This case was set down for reargument, and upon reargument the claim was made that the ordinance became effective subsequent to the time the 18th Amendment became effective, and it was urged that the 18th Amendment, in so far as it applied, was of controlling force.
If it were not for this last question argued on resubmission of the case, the decision announced in Celina & Mercer County Telephone Co. v. Union-Center Mutual Telephone Assn., ante, 487, would entirely determine the questions made in this record; and with the exception of this later claim all questions will be considered determined upon the authority of that case.
Assuming that the ordinance went into effect after the 18th Amendment to the Constitution of Ohio took effect, what force may be found in the claims of defendant:
1. That the applicable portion of the Home Rule Amendment is self-executing.
2. That the passage of the ordinance and its acceptance make a contract between the municipality and the defendant of the kind and character contemplated in the amendment.
3. That if these two contentions are resolved in the affirmative, then Section 614-52, General Code, is an abridgment of these rights, and for that reason is unconstitutional in that it is repugnant to the Home Rule Amendment.
Section 4 and a part of Section 5 are the pertinent portions of the Home Rule Amendment, and read as follows:
*528 “Section 4. Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility.
“Section 5. Any .municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage.”
Transposing the above language to the exact matter in issue it would read:
Any municipality may contract with others for the product or service of any public utility, to be supplied to the municipality or its inhabitants.
And such a contract the municipality may make under this direct power granted in the constitution. That the power thus given is self-executing, this court has several times held. In Dravo-Doyle Co. v. Village of Orrville, 93 Ohio St., 236, the law is definitely stated in syllabus 1:
“Section 4, Article XVIII of the Constitution, confers plenary power on 'any municipality’ to acquire, construct, own, lease and operate any public *529 utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and to contract with others for any such product or service.”
See also State, ex rel. City of Toledo, v. Lynch, Auditor, 88 Ohio St., 71, 94, and State, ex rel. Campbell, Pros. Atty., v. Cincinnati Street Ry. Co., 97 Ohio St., 283, 293.
We next come to the effect of the ordinance. Does an ordinance granting a franchise by a village, to construct therein a telephone exchange, and for that purpose to occupy the streets and highways of said municipality, thereby to provide telephone service to the inhabitants thereof (record, page 12, paragraph 7 conclusion of facts), assuming that the same is accepted in writing by the public utility company, constitute a contract for product or service? Because if it does constitute such a contract it is binding and controlling. Ohio River Power Co. v. City of Steubenville, 99 Ohio St., 421, and Interurban Ry. & Terminal Co. v. Public Utilities Commission, 98 Ohio St., 287.
In East Ohio Gas Co. v. City of Akron, 81 Ohio St., 33, syllabus 2, it is held:
“When a municipal corporation, by ordinance, gives its consent that a natural gas company may enter the municipality, lay down its pipes therein and furnish gas to consumers upon terms and conditions imposed by the ordinance, which are accepted in writing .by said company, such action by both parties constitutes a contract and the rights of *530 the parties thereunder are to be determined by the contract itself.”
The rights of the. parties thereunder are tQ be determined by the contract itself. That is to say, by the granting of the franchise, regularly passed by ordinance, and the proper acceptance of the terms thereof, the minds of the contracting parties have met, but the extent of the rights, or the limitation of the rights thereunder, or the lack of rights or infirmities therein, are all referable to the contract itself and are subjects of lawful interpretation and construction.
To this end we must refer to old and well-established principles, for, after all, it is the application of the fundamental basic law to the modern development of business and government, the fitting of those principles to everyday progress and development, that furnishes the constant and continued task of the judicial as well as the other coordinate branches of the government.
To constitute a valid contract, there must be parties capable to contract, a lawful subject-matter, a sufficient consideration, and an actual agreement to do or forbear from doing some particular thing.
The grant of the franchise is no more or no less than a permission to use the streets for the benefit of the public, and the acceptance of the franchise is no more or less than the expressed intention of doing that for which the grant was intended. But in this case more was done. The telephone plant was constructed, the streets used, and the telephone service installed. The putting into operation of the service supplied what theretofore was wanting, *531 namely, the subject-matter of the contract, — that, part of the consideration moving to the village on behalf of its inhabitants, — the rights granted to the utility company being the consideration moving to it.
Service is not only a proper and sufficient consid-, eration to sustain a contract generally, but it is the one of the two particular things which is the subject of contract under Section 4, Article XVIII of the Constitution, and although there is no definite period of time fixed, and no schedule of rates, yet we doubt not that the village, while the defendant is furnishing service, may enforce the contract in respect to the compelling of the furnishing of the service to all the inhabitants indiscriminately. Again, to constitute a contract, there must be parties capable to contract. Here we meet the difficulty.
The village is given the direct power in the Home Rule Amendment to contract “with others” for product or service. No question can arise here, as often did before the amendment became effective, as often nearly as a case arose, as to the authority of the municipality to contract and whether or not in so doing the act of the municipality was ultra vires unless it was definitely shown that the legislature had specifically delegated the power in no uncertain terms. Here the power to contract with others is clear, positive and direct. The question then arises, with what others, with whom ? Certainly with any person, corporation or other legal entity capable to contract, and just as certainly not with one who did not possess the power or authority to contract, — not from considerations arising by way of limita *532 tions upon the municipality, but from considerations going directly to the effectiveness, enforceability and legality of the contract itself.
Section 614-52, General Code, provides:
“No telephone company shall exercise any permit, right, license or franchise * * * to own or operate a plant for the furnishing of any telephone service * * * in any municipality or locality * * * unless such telephone company first secures * * * a certificate.”
The defendant has not applied for or secured a certificate. (See record, page 12, 8th conclusion of fact.)
The defendant, therefore, by its failure to possess a certificate is under a legal infirmity, without which it is incapable of contracting for the furnishing of telephone service. It is contracting to do something which it cannot do, to furnish something in law which it is precluded from furnishing. This want of a certificate on the part of a public utility desiring to contract for the furnishing of telephone service is the same as lacking the certificate or badge of authority to enter into a contract to furnish the service. This, however, in no way limits the power of the municipality. It is not even a party to the litigation.
Suppose, an electric light company, chartered to furnish electric current, should ask, obtain, and accept a franchise to furnish telephone service, clearly outside its charter power. Could it be claimed, because the municipality was the other party and had the constitutional power to contract, to enter into it by constitutional grant, that the corporation or *533 ganization laws of the state would thereby of necessity give way and become unconstitutional ?
The contractual incapacity in no way affects or limits the municipal power, but renders a contract made with another, who is under disability, ineffectual and unenforceable. The contract falls because of the infirmity of the other party, and this section, regulatory in nature, cannot be said to abridge the constitutional grant comprised in the Home Rule Amendment.
The j'udgment of the court of appeals is hereby reversed upon the authority of Celina & Mercer County Telephone Co. v. Union-Center Mutual Telephone Assn., supra, and for the reasons herein announced.

Judgment reversed.

Robinson, Jones and Matthias, JJ., concur.